JACQUELINE MITCHELL *et al.*, Plaintiffs-Appellees and Appellants, *v.* UNITED ASBESTOS CORPORATION *et al.*, Defendants-Appellants and Appellees.

Fifth District    No. 79-566

Opinion filed September 14, 1981.

John L. McMullin, of Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, of St. Louis, Missouri, Joseph R. Davidson, of Bernard & Davidson, of Granite City, and Robert W. Schmieder, of Wagner, Bertrand, Bauman & Schmieder, of Belleville, for appellants.

Sandor Korein, of Cohn, Carr, Korein, Kunin, Schlichter and Brennan, of East St. Louis, for appellees.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Action was brought in a four-count complaint to recover damages for the wrongful death of Frank J. Mitchell, who allegedly died from the disease of asbestosis. Decedent died on October 14, 1972, and the complaint was filed in the circuit court of Madison County, Illinois, on October 15, 1974, the day following an Illinois legal holiday. Counts I and II of the complaint, filed by decedent's widow as administratrix of his estate, were for wrongful death. Count I alleged negligence, and count II sought recovery under a theory of products liability. In counts III and IV, the widow individually, and as administratrix and also as mother and guardian of decedent's children, sued for loss of consortium and for medical and surgical expenses, lost earnings, and pain and suffering of decedent because of disability until the time of his death. Count III alleged negligence, and count IV was based on products liability.

Following the filing of defendants' motions to dismiss all counts of the complaint, the trial court on October 17, 1979, entered an order which provided, *inter alia*, as follows:

"The joint motions of all defendants to dismiss Counts I, II, III and IV coming before the Court, argument having been heard by the Court and memorandums of law submitted to the Court, it is hereby ordered that defendants' motions to dismiss Counts III and IV of plaintiffs' complaint are hereby sustained and said Counts III and IV of plaintiffs' complaint are hereby dismissed with prejudice.

The Court expressly finds that there is no just reason for delaying enforcement or appeal of this order in accordance with Civil Rule 110A Section 304(a).

The Court further orders that defendants' motions to dismiss Counts I and II of plaintiffs' complaint are hereby overruled. The Court further finds that the above orders overruling defendants' motions to dismiss Counts I and II involve questions of law as to

which there is substantial grounds for difference of opinion and that an immediate appeal from this order would materially advance the ultimate termination of the litigation. The questions of law involved are (1) whether the administratrix of a Missouri resident's estate who is duly appointed by the Missouri courts is the proper plaintiff in an action filed pursuant to the Illinois Wrongful Death Act, and if she is not the proper plaintiff, whether her complaint should be dismissed; (2) whether the substantive laws including limitations periods and conflict of law rules, of Illinois or Missouri, is applicable to the issues raised in the motion to dismiss; (3) whether any claims presented in plaintiffs' complaint are barred by the applicable statutes of limitations; (4) whether Ill. Rev. Stat. Ch. 131, par. 1.11 (1973), is applicable in this action brought pursuant to Ill. Rev. Stat. Ch. 70, par. 2 (1973); (5) whether, and to what extent, the Missouri or Illinois wrongful death acts, including the repealed $50,000 limitation on wrongful death in the Missouri Wrongful Death Act, are applicable to this action. The Court specifically makes this finding in accordance with Civil Rule 110A Section 308(a)."

Defendants appeal from the trial court's order denying their motions to dismiss counts I and II of plaintiffs' complaint and raise those questions certified to this court by the trial court under Supreme Court Rule 308(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 308(a)). Plaintiffs also appeal from the trial court's dismissal of counts III and IV of the complaint.

At the outset, it should be noted that the trial court certified one of the questions of law involved as being whether a specified provision of chapter 131 of the 1973 Illinois Revised Statutes is applicable to a suit filed under section 2 of chapter 70 of the 1973 Illinois Revised Statutes. We conclude, however, that the statutory provisions controlling the instant case are those which were in effect on the date of decedent's death and are found in the 1971 edition of the Illinois Revised Statutes. Parenthetically, both versions of the statutes are identical with the exception that under the 1971 edition, the amount recoverable in a wrongful death action is directed to be distributed to the "widow and next of kin" of the decedent while under the 1973 statutes, such distribution is to be made to the "surviving spouse and next of kin." Those individuals are obviously the same in the case at bar.

The record reveals that the decedent, Frank J. Mitchell, was, until his death at the age of 44 on October 14, 1972, a resident of St. Louis, Missouri. He worked in asbestos application as a pipe coverer in 1949 and 1950, then spent several years in military service. On his return to civilian life, he again began working with asbestos in 1954 as a member of Local 1, Heat and Frost Insulators and Asbestos Workers, AFL-CIO. Mitchell was

a journeyman pipe coverer and was sent out on jobs by telephone calls from both his union and employers. He continued to work with asbestos-containing materials, such as insulation, for a variety of employers in both Missouri and Illinois until shortly before his death. During his career, he worked 50 to 60 percent of the time in Missouri and 40 to 50 percent of the time in Illinois. He paid income taxes in both Missouri and Illinois.

In 1971, the decedent began complaining of respiratory difficulties and shortness of breath. When he was hospitalized for tests, decedent was diagnosed as suffering pneumoconiosis, asbestosis, far advanced with pulmonary fibrosis, caused by inhalation of asbestos fibers. He was released and then returned to work, including work in Illinois; however, he continued to suffer shortness of breath and to lose time from work as a result of his illness. He began losing weight, was rehospitalized for five months, and subsequently died of asbestosis two weeks after his final release from the hospital. Surviving him were his wife, two minor children, and his mother.

Defendants are all foreign corporations. All are engaged in the manufacture, sale and distribution of products containing magnesium and asbestos, which are used for insulation, adhesion and construction. All defendants do business in Madison County, Illinois, and apparently most defendants are authorized to do business in both Illinois and Missouri.

Frank J. Mitchell died on October 14, 1972, a resident of St. Louis, Missouri, the State in which he had resided throughout his life. The record reflects that decedent's surviving wife, children, and mother were all residents of the State of Missouri. The record further reflects that all medical bills of decedent's last illness and his funeral bill were incurred in Missouri.

A petition for letter of administration of decedent's estate was filed in St. Louis County, Missouri, on October 11, 1974, and on October 15, Jacqueline Mitchell, decedent's widow, was appointed administratrix. On the same date, Mrs. Mitchell filed the four-count complaint in the circuit court of Madison County, Illinois. The complaint alleged that defendants did business in Madison County, Illinois, including manufacturing, distributing and selling various items containing asbestos; and that during the last years of his life, decedent was employed at various job sites in Illinois, during which time he was exposed to, contacted, and ingested asbestos from those products.

At a subsequent time, all defendants joined in a document entitled "Motions Amending and Supplementing All Defendants' Prior Motions to Dismiss and/or to Strike," which raised the issues now before this court on appeal. After considering lengthy memoranda, the trial court denied all defendants' motions on May 20, 1977. Some defendants filed answers to plaintiffs' complaint, then moved both to reconsider the May 20, 1977,

order and for leave to withdraw their answers. On October 21, 1977, the court granted all answering defendants leave to withdraw their answers and on October 17, 1979, granted the motions of all defendants to reconsider and vacated the May 20, 1977, order. The parties now appeal from additional provisions of the October 17, 1979, order overruling, in part, defendants' motions to dismiss or to strike and sustaining such motions in part.

The defendants appeal from the trial court's denial of their motions to dismiss counts I and II of plaintiffs' complaint. The five issues certified by the trial court with respect thereto combine to present a significant question of choice of law. Defendants assert that procedural and substantive questions involved in the case should be governed by Missouri law, while plaintiffs contend that the appropriate law governing all questions is that of Illinois.

The statutes of Missouri and Illinois applicable to wrongful death which were in effect at the time of decedent's death are in direct conflict. Section 537.080 of the Missouri Wrongful Death Act (1967 Mo. Laws §537.080) provided as follows:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, * * * the person who * * * would have been liable if death had not ensued shall be liable to an action for damages, * * * which damages may be sued for and recovered.

(1) By the spouse or minor children, natural or adopted of the deceased, either jointly or severally, * * * and provided further that only one action may be brought under this subdivision against any one defendant; or

(2) If there be no spouse or minor children or if the spouse or minor children fail to sue within one year after such death, or if the deceased be a minor and unmarried, then by the father and mother, natural or adoptive, who may join in the suit, and each shall have an equal interest in the judgment; * * * or

(3) If there be no husband, wife, minor child or minor children, natural born or adopted as herein indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased * * *."

Under this statutory provision, Jacqueline Mitchell's suit as administratrix of her husband's estate was not properly brought, because the decedent was survived by his widow, two children, and one of his parents.

The Missouri Wrongful Death Act in effect at the time of decedent's death also included a limitation on the amount of damages recoverable. The act stated:

"In every action brought under section 537.080, the jury may give to the surviving party or parties who may be entitled to sue such damages, not exceeding fifty thousand dollars, as the jury may deem fair and just for the death and loss thus occasioned, with reference to the necessary injury resulting from such death, and having regard for the mitigating or aggravating circumstances attending the wrongful act, neglect or default resulting in such death." 1967 Mo. Laws §537.090.

At the time of decedent's death, the Missouri statute of limitation for a wrongful death action was two years. (1967 Mo. Laws §537.100.) Since decedent's death, each of these statutes has been repealed. The $50,000 limit on recovery for wrongful death was removed in 1973 (Mo. Rev. Stat. §536.090 (Supp. 1973)). The "terraced" scheme for choice of plaintiffs has been abolished, and the period within which one could bring suit extended to three years. 1979 Mo. Laws §§537.080, 537.100.

The Illinois statutes pertaining to wrongful death provide that suit shall be brought "by and in the names of the personal representatives" of the deceased person. (Ill. Rev. Stat. 1971, ch. 70, par. 2.) Since 1967, there has been no limitation on the amount recoverable for wrongful death. The amount recovered is to be distributed "to each of the widow and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person." (Ill. Rev. Stat. 1971, ch. 70, par. 2.) Under the terms of the statute, every action "shall be commenced within 2 years after the death" of the decedent.

Traditionally, questions of choice of law have been solved by applying the law of the place of the wrong (*lex loci delicti*), resulting in the rights and liabilities of the parties being determined by the local law of the State where the injury occurred. The doctrine was relatively easy to apply, provided predictability of outcome, and discouraged forum shopping. In recent years, however, the doctrine has been discredited because "the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues." (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 46, 262 N.E.2d 593, 595.) Because of such criticism, most States, including Illinois, have adopted the principles outlined by the Restatement of Conflict of Laws.

Sections 6 and 145 of the Restatement (Restatement (Second) of Conflict of Laws §§6, 145 (1971)), provide as follows:

"§6. Choice-of-Law Principles.
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

"§145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in §6.

(2) Contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Initially, courts applying the Restatement approach to choice of law questions attempted to determine which State had the "most significant relationship" to the parties by counting contacts in each State and comparing them in quantitative groups. However, the counting of each State's contact to the parties did little more to protect the interests of various jurisdictions in the resolution of particular issues than did the old *lex loci delicti* rule. For example, when controlling contacts were counted, the domicile of the parties, with all the contacts appurtenant thereto, would often result in the substitution of "a domiciliary conceptualism that rested on a vested right accruing from the fact of domicile" for the vested right accruing from "the place of the injury" under *lex loci delicti*. (See *Rosenthal v. Warren* (2d Cir. 1973), 475 F.2d 438, 444.) Neither approach accurately reflected the interests which various States might have in the issues being litigated.

To replace the counting of contacts analysis, various States have adopted a sophisticated "interest analysis" approach to choice of law

problems. (*Rosenthal*, 475 F.2d 438, 444.) This approach is based on the conclusion that "[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws." (*Miller v. Miller* (1968), 22 N.Y.2d 12, 17, 290 N.Y. Supp. 2d 734, 738, 237 N.E.2d 877, 880; *In re Estate of Crichton* (1967), 20 N.Y.2d 124, 134-35, 281 N.Y. Supp. 2d 811, 820, 228 N.E.2d 799, 806.) Instead of a mere counting of contacts, what is therefore required is a "consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue." *Johnson v. Spider Staging Corp.* (1976), 87 Wash. 2d 577, ____, 555 P.2d 997, 1001; *Potlatch No. 1 Federal Credit Union v. Kennedy* (1969), 76 Wash. 2d 806, ____, 459 P.2d 32, 35.

It appears that case law in both Illinois and Missouri has also rejected the "counting of contacts" approach in favor of the more sophisticated "interest analysis" construction of the Restatement. In *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.* (N.D. Ill. 1976), 422 F. Supp. 405, the plaintiff brought action in Federal court, based on diversity, to recover for a personal injury she sustained while on a hunting safari in Mozambique. The court noted that although Mozambique had the majority of contacts with the two parties and the occurrence, the fact was not necessarily determinative of the interest each jurisdiction had in the issues involved. In this regard the court stated:

> "These contacts and the state interests evoked by them indicate that both Illinois and Mozambique are interested in the resolution of the liability issue. Both jurisdictions' interests are significant. The numerous Mozambique contacts highlight that government's interest in controlling the conduct of those who take action within its borders, and the interest in affording the protection of its laws to its domiciliaries. Illinois, on the other hand, has a strong interest in seeing that its residents are adequately compensated for tortious injuries. The Illinois interest, although based upon a single contact, cannot for that reason be automatically dismissed as less significant. A contact assumes significance only in view of the legal issue to which it relates. Our evaluation of the contacts indicates that both Illinois and Mozambique are validly interested in the resolution of the issue of defendant's liability, and we hesitate to characterize either jurisdiction's interest as more significant." *Pancotto*, 422 F. Supp. 405, 408.

In *Griggs v. Riley* (Mo. App. 1972), 489 S.W.2d 469, the Missouri Court of Appeals addressed a choice of law question where an Illinois driver and passenger took a social trip to Missouri, where an accident occurred. The Illinois guest statute, which insulated the driver from suit by the passenger, conflicted with the Missouri policy of compensating

persons negligently injured on its highways. The court refused to place sole reliance on the contacts outlined in section 145 of the Restatement, considering instead the basic principles governing choice of laws under section 6 of the Restatement. The court there stated:

"Since we are dealing here with the relationship between the parties, and since * * * the place of accident in this type of case is largely fortuitous, paragraphs 2(c) and (d) of §145 [which enumerates as significant contacts the domicile of parties and place where relationship is centered] would appear to provide the basis upon which determination is to be made. Those two paragraphs would, if considered alone, require that Illinois law governing the relationship be applied. But §145 must be viewed from the proper perspective. The basic principles governing choice of laws are those enumerated in §6. Section 145 simply provides that certain contacts may be taken into account in determining the choice of law *under the principles of §6.* So we must examine the principles of §6, paragraph 2." *Griggs,* 489 S.W.2d 469, 473.

Those cases which have criticized contact counting and adopted interest analysis focus on the policies of the jurisdictions. An example is *Leschkies v. Playboy Club of Lake Geneva, Inc.* (N.D. Ill. 1979), 465 F. Supp. 80, 82, in which it was stated:

"The Restatement further provides that the above-mentioned contacts are to be evaluated in light of those underlying policy factors important to the tort area, which include among them the relevant policies of the forum and the relevant policies of any other state which may have a dominant interest in the determination of a particular issue being considered."

■■ The desire to isolate and analyze the actual interests of the various jurisdictions in the litigation has given rise to a three-step process: "* * * first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." (*Miller v. Miller,* 22 N.Y.2d 12, 16, 290 N.Y. Supp. 2d 734, 737, 237 N.E.2d 877, 879; *In re Estate of Crichton,* 20 N.Y.2d 124, 133-34, 281 N.Y. Supp. 2d 811, 819-20, 228 N.E.2d 799, 805-06; *Dym v. Gordon* (1965), 16 N.Y.2d 120, 124, 262 N.Y. Supp. 2d 463, 466, 209 N.E.2d 792, 794.) When this process is applied to the facts of an individual case, the choice of law principles outlined in section 6 of the Restatement are effectively applied.

In the instant case, there are several issues involved since Missouri and Illinois law conflict at a number of points. The first issue is whether

the administratrix was the appropriate person to bring the wrongful death lawsuit, as provided by Illinois law, or was precluded from doing so by applying Missouri law. A second issue is whether the $50,000 limitation on recovery for wrongful death in Missouri is to be applied. Subsidiary to these questions is the issue of which substantive laws, including statute of limitations, are applicable to the plaintiff's suit.

After isolating the issues, we are next directed to "identify the policies embraced in the laws in conflict." The committee comments to section 6 of the Restatement outline those circumstances where the identification of underlying policies is particularly important as follows:

> *"Basic policies underlying particular field of law.* This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved. * * *." Restatement (Second) of Conflict of Laws §6, comment *h*, at 15 (1971).

In determining the policies reflected by a State's statutory scheme, individual statutes may not be considered outside of the purpose to which the scheme as a whole is addressed. In this regard, the committee comment further states in part:

> "The content of the relevant local law rule of a state may be significant in determining whether this state is the state with the dominant interest. So, for example, application of a state's statute or common law rule which would absolve the defendant from liability could hardly be justified on the basis of this state's interest in the welfare of the injured plaintiff." Restatement (Second) of Conflict of Laws §6, comment *f*, at 15 (1971).

While the statutes of Missouri and Illinois specifying who may bring an action for wrongful death differ greatly, the policies underlying those statutes do not differ at all. Under the Missouri statute, a suit for wrongful death may be brought within one year of decedent's death only by the spouse or minor children of the deceased, and if they do not sue, only by the father and mother of the deceased. (1967 Mo. Laws §537.080.) It is only where none of the above parties survived and brought suit could the administrator of the estate, as personal representative of the decedent, institute suit. In a recent case, the Missouri Supreme Court explained the basic policy underlying the statutory scheme, stating:

> "We believe that §537.080(1) establishes the general principle that first preference is given to those persons who naturally suffer

the greatest loss; and that subsection 2 and 3 of that section establish exceptions to that principle." *Kausch v. Bishop* (Mo. 1978), 568 S.W.2d 532, 536.

While Illinois, unlike Missouri, specifically provides that a wrongful death action is to be brought by the personal representative of the decedent, the policy underlying the statutory scheme is precisely the same as that in Missouri. The wrongful death statute itself provides that the amount recovered in a wrongful death action shall be distributed to the widow and next of kin in proportion to the dependency of each such person upon the deceased person. (Ill. Rev. Stat. 1971, ch. 70, par. 2.) Hence, in Illinois, as well as Missouri, "first preference is given to those persons who naturally suffer the greatest loss."

Since decedent's death in 1972, the so-called "terraced" wrongful death provisions of the Missouri statute have been subject to criticism by the courts of Missouri. In *Kausch v. Bishop* the court stated:

> "The courts of this state have struggled long and hard to reconcile the difficulties and perplex problems raised in our present wrongful death statutes. The problems are recurring and the resolutions adopted are sometimes contradictory. In view of the difficulties and in view of the new light now shed on traditional concepts that has governed the statutes and judicial decisions for years, we urge the General Assembly to review the present statutes relating to wrongful death and adopt a comprehensive, simpler and more organized Death Act which conforms to the basic needs of contemporary society." (568 S.W.2d 532, 537.)

In response to such recommendations, the Missouri General Assembly repealed the "terraced" scheme in 1979.

In view of the foregoing, it is apparent that the policies of the interested States, Illinois and Missouri, are the same. Hence, there is good reason to apply the local law of that State which will best achieve the basic policy underlying the field of law involved. Under the circumstances presented here, it appears that Illinois law best achieves the policy expressed by both States.

While the policy of both States is to give first preference in wrongful death actions to those persons who suffer the greatest loss, the policies of the two States with regard to the amount recoverable is not the same. At the time of decedent's death in 1972, Missouri placed a $50,000 limit on the amount recoverable for a wrongful death, and Illinois had no such limitation. Generally, a State's interest in limiting wrongful death damages is to protect defendants from excessive financial burdens, as well as to eliminate speculative claims and difficult computation issues. (*Johnson v. Spider Staging Corp.*) The interest in preventing financial burdens is pri-

marily local, in that the State seeks to protect its own residents. *Johnson v. Spider Staging Corp.*

While a major policy behind a State's interest in allowing full recovery is to attempt to compensate survivors for their loss, a second purpose is deterrence. In *Hurtado v. Superior Court* (1974), 11 Cal. 3d 574, 583, 522 P.2d 666, 672, 114 Cal. Rptr. 106, 112, the court stated:

"It is manifest that one of the primary purposes of a state in creating a cause of action in the heirs for the wrongful death of the decedent is to deter the kind of conduct within its borders which wrongfully takes life. * * * It is also abundantly clear that a cause of action for wrongful death without any limitation as to the amount of recoverable damages strengthens the deterrent aspect of the civil sanction: 'the sting of unlimited recovery * * * more effectively penalize[s] the culpable defendant and deter[s] it and others similarly situated from such future conduct.' [Citations.]"

Accordingly, interest analysis on the issue of limitations on recovery involves a balance of the Illinois interest in deterring conduct against the Missouri interest in limiting recovery against resident corporations. *Cf. Rosenthal v. Warren.*

Missouri's interest in limiting recovery has become somewhat diluted, however. In recent years, a number of States have repealed their wrongful death limitations, so that few States retain an outright limit on recovery. (*Rosenthal v. Warren.*) Missouri itself repealed its limitation on wrongful death recovery in 1973, and the Missouri Supreme Court recognized the effect such repeal had on cases which preceded it and stated:

"In addition to approving of the conclusion reached as well as the approach to evaluating the significance of the 'contacts' noted, we add only the comment, *i.e.*, that Missouri has removed the $50,000 limit on recovery for wrongful death by amendment of Section 537.090, RSMo 1969, Laws 1973, p. ___, H. B. No. 173, §1. Such action by the General Assembly makes non-persuasive the railroad's argument that Missouri has some compelling interest to restrict recovery in the instant matter." *State ex rel. Broglin v. Nangle* (Mo. 1974), 510 S.W.2d 699, 704.

After identifying the policies embraced in the laws in conflict, we are directed to "examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." These contacts are significant only to the extent that they relate to the policies of the conflicting laws. *Miller v. Miller.*

The first contact enumerated in section 145 of the Restatement is the place of injury. This contact is recognized as being important because "persons who cause injury in a state should not ordinarily escape liabilities

imposed by the local law of that state on account of the injury." (Restatement (Second) of Conflict of Laws §145, comment *e*, at 419 (1971); *Forty-Eight Insulations, Inc. v. Johns-Manville Products Corp.* (N.D. Ill. 1979), 472 F. Supp. 385, 392.) In the instant case, decedent's injury was the result of years of employment in both Missouri and Illinois.

The location of the second contact, the place of the conduct which caused injury, is unclear. A determination of where conduct took place is difficult where decedent's injury is the culmination of years of exposure to defendants' product because the defendants commit no single overt act which directly causes injury to the victims. *Cf. Forty-Eight Insulations, Inc.*

The third contact is the domicile, place of incorporation, and place of business of the parties. This contact is significant "because of a state's interests in fully compensating its residents who are tort victims, in insuring that its residents comply with its tort standards, and possibly in insulating a domiciliary from liability." (*Forty-Eight Insulations, Inc.*, 472 F. Supp. 385, 392.) In the instant case, defendants are careful to point out that the surviving spouse, children, and parent of the decedent are all residents of Missouri. Consequently, they assert that only Missouri has an interest in who the appropriate party to bring an action for wrongful death should be. However, the policy underlying the Missouri statute is to ensure that "first preference is given to those persons who naturally suffer the greatest loss"; therefore, the interest of Missouri which results from residence in the State is the welfare of an injured plaintiff. Defendants seek to have themselves absolved of liability as a result of this contact; however, as the Restatement notes, "application of a state's statute or common law rule which would absolve the defendant from liability could hardly be justified on the basis of this state's interest in the welfare of the injured plaintiff." (Restatement (Second) of Conflict of Laws §6, comment *f*, at 15 (1971).) Accordingly, the fact that the decedent's survivors were domiciliaries of Missouri and decedent's probate estate was opened in Missouri is not a significant contact for choice of law purposes where it is used only in an attempt to defeat recovery by the domiciliaries, in contravention of the State interest which arises from the fact of their local domicile.

Defendants also rely on the widow's and children's residence in Missouri in reference to the $50,000 limitation on recoveries for wrongful death. As noted, however, the purpose behind limiting wrongful death damages is to protect resident defendants from excessive financial burden. The domicile of the plaintiffs bears no relation to this purpose. Instead, it is the residency of the defendants that is the only significant contact in this regard.

In the instant case, most of the defendant corporations conducted

business operations which were either national or regional in scope, and they conducted business in a number of States. Most defendant corporations meet the requirements of residency in both Missouri and Illinois. As we have seen, the Missouri interest in restricting recovery is extremely limited (*State ex rel. Broglin v. Nangle*) and was repealed soon after the death of decedent. In contrast, Illinois retains an ongoing interest in deterring conduct which causes wrongful death from taking place within its borders. Moreover, it cannot be said that the defendants placed any reliance on Missouri's financial limitation on wrongful death recovery in determining their course of conduct. Precisely the same type of occurrences took place on decedent's jobs in Missouri as took place in Illinois, where no limitation was imposed on the amount recoverable for wrongful death.

When the contacts affecting the major issues involved in the instant case are considered, certain conclusions are inescapable. Missouri has the most significant contact with respect to who may institute suit for wrongful death because decedent's survivors are residents of Missouri. However, this contact is important only to the extent it relates to the policies of the conflicting laws. The express policy of both States regarding who may bring suit is to give preference to "those persons who naturally suffer the greatest loss." The application of the Missouri statute in the instant case would defeat that policy, whereas Illinois law would implement it.

The second issue, whether a financial limitation to recovery should apply, has less to do with the residence of the survivors than with the residence of defendants. In that respect, the contacts of the two States are virtually equal. However, while Missouri has expressly de-emphasized its interest in limiting recovery, the Illinois interest in deterring conduct resulting in wrongful death by permitting full recovery is ongoing.

■■ ■ Accordingly, with regard to both issues it can accurately be said that Illinois had the most significant relationship to the occurrence and the parties. Only Illinois law effectuated the policy of both States that those persons who suffered the greatest loss may bring suit and recover, and the Illinois interest in deterring conduct which causes wrongful death by permitting full recovery outweighed the repealed Missouri interest in limiting full recovery. Consequently, we conclude that Illinois law should apply to both issues.

Having determined that Illinois law must be applied to the issues concerning wrongful death, we must next determine whether the complaint was timely filed. Defendants assert that the Illinois "borrowing" statute should apply. That statute provides as follows:

> "When a cause of action has arisen in a state or territory out of this state, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time,

an action thereon shall not be maintained in this state." (Ill. Rev. Stat. 1971, ch. 83, par. 21.)

By its terms, the "borrowing" statute would apply only where a cause of action "arose" outside of the State of Illinois.

■■ As previously noted, nearly one-half of decedent's employment through which he was allegedly exposed to asbestos took place in Illinois, including the final days the decedent worked. In addition, we have found that Illinois had the most significant relationship to the occurrence, because its laws most directly effectuated the policies underlying the instant cause of action. Consequently, it would be inconsistent to conclude that the cause of action "arose" outside the State of Illinois. Since the cause of action arose in terms of interest analysis in Illinois, the "borrowing" statute does not apply. *Hamilton v. General Motors Corp.* (7th Cir. 1973), 490 F.2d 223.

Since we have concluded that the borrowing statute does not apply, we must next consider whether the complaint was timely filed under Illinois law. The Illinois Wrongful Death Act provides that action "shall be commenced within 2 years after the death" of the deceased. (Ill. Rev. Stat. 1971, ch. 70, par. 2.) As defendants contend, the courts of this State have traditionally held that the Wrongful Death Act created a cause of action that did not exist at common law. Hence, the requirement that plaintiff act within two years was held to be a condition precedent to the filing of a wrongful death action. (*Wilson v. Tromly* (1949), 404 Ill. 307, 89 N.E.2d 22; *Metropolitan Trust Co. v. Bowman Dairy Co.* (1938), 369 Ill. 222, 15 N.E.2d 838.) In reliance on these authorities, defendants contend that the following provisions of section 1 of the act governing statutory construction do not apply:

"The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute nor or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded." Ill. Rev. Stat. 1971, ch. 131, par. 1.11 (currently Ill. Rev. Stat. 1979, ch. 1, par. 1012).

In the instant case, the decedent's death took place on October 14, 1972, and the suit was filed on October 15, 1974, the day following a legal holiday. If the time limitation is not a statute of limitations but a substantive provision of the Act itself which must be observed in all events (*Wilson v. Tromly*), the action was not timely filed. If, however, the two-year period may be tolled by the various provisions of section 1 of the general statute governing statutory construction, then the complaint was filed within the statutory period.

■■ In *Wilbon v. D. F. Bast Co.* (1978), 73 Ill. 2d 58, 73, 382 N.E.2d 784, 790, our supreme court concluded that the assertion that a cause of action for wrongful death did not exist at common law was "a much criticized concept stemming from questionable antecedents." In determining whether a suit was barred by the statute of limitations, the *Wilbon* court reviewed the history of the concept and quoted at length from Massachusetts' contrary conclusion in *Gaudette v. Webb* (1972), 362 Mass. 60, 284 N.E.2d 222, in which the court stated:

" '[W]e are convinced that the law in this Commonwealth has also evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin, and we so hold. * * *

Consequently, our wrongful death statutes will no longer be regarded as " 'creating the right' " to recovery for wrongful death. They will be viewed rather as: (a) requiring that damages recoverable for wrongful death be based upon the degree of the defendant's culpability; (b) prescribing the range of the damages recoverable against each defendant; (c) requiring that any action for wrongful death be brought by a personal representative on behalf of the designated categories of beneficiaries; and (d) requiring that the action be commenced within the specified period of time, as a limitation upon the remedy and not upon the right. We further hold that statutes limiting the period for bringing actions for death are to be construed in the same manner as the limitations contained in G. L. c. 260, the general statute of limitations, and that in appropriate cases they may be tolled by the various provisions of G. L. c. 260.' 362 Mass. 60, 71, 284 N.E.2d 222, 229." (*Wilbon v. D. F. Bast Co.* (1978), 73 Ill. 2d 58, 62-63, 382 N.E.2d 784, 785-86.)

We conclude, however, that neither *Wilson v. Tromly* nor *Wilbon v. D. F. Bast Co.* is controlling and that the instant suit was instituted within the two-year period of limitation under the provisions of the general statute governing statutory construction (Ill. Rev. Stat. 1971, ch. 131, par. 1.11). This application of section 1.11 does not affect the substantive provisions of the Wrongful Death Act. It simply controls the manner of interpreting one of its provisions as do all other applicable provisions of the act governing the interpretation of statutes (Ill. Rev. Stat. 1971, ch. 131, par. 1 *et seq.*). Accordingly, plaintiff's complaint was timely filed under Illinois law.

■■ Applying the foregoing analysis, we now make the following conclusions concerning those issues certified for appeal by the trial court: (1) the administratrix is the proper plaintiff, regardless of the fact that the probate estate was opened in Missouri because Illinois has the most significant relationship to the parties and action by virtue of the underlying

interests of the two States involved; (2) for the same reason, Illinois substantive law applies to the issues; (3) plaintiffs' claim is not barred by the statute of limitations, because (4) the provisions of the act relating to the construction of statutes (Ill. Rev. Stat. 1971, ch. 131, par. 1.11) are applicable to an action for wrongful death; and (5) the repealed Missouri limitation on recovery for wrongful death is not applicable to the instant case.

As part of this cause of action, plaintiffs have appealed the trial court's dismissal of counts III and IV of their complaint. These counts relate to medical and surgical expense, lost earnings, and pain and suffering which the decedent experienced prior to his death and which he could have asserted, had he been alive, on his own behalf. They also include a claim of loss of consortium asserted by the wife of the decedent for the period during his injury until his death.

Plaintiffs first assert that the wrongful death statute of limitations should apply to claims for medical and surgical expenses, lost earnings, and pain and suffering, and that the two-year period on these claims did not begin to run until decedent's death. We cannot agree.

Sections 14 and 19 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, pars. 15, 20) provide as follows:

> "Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued * * *." Ill. Rev. Stat. 1979, ch. 83, par. 15.

> "If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives before the expiration of that time, or within one year from his death whichever date is the later. * * *" (Ill. Rev. Stat. 1979, ch. 83, par. 20.)

In cases of occupational disease under these statutes, the cause of action accrues and the statute of limitations begins to run when the employee discovered, or should have discovered, that he is ill as a result of the negligence of another party or as a result of wrongful exposure to a defective product. (*Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776, 274 N.E.2d 118.) Plaintiffs in the instant case claim that these provisions do not apply when death ultimately resulted from the injury.

Although action is to be brought under the Wrongful Death Act by and in the name of the personal representative of the deceased person, the legislative intent of the Act is that the claims brought are those of the individual beneficiaries. (*Wilbon v. D. F. Bast Co.*) By contrast, a claim under the survival statute is that of the deceased which arose during his

life and survived his death. The statutes are not the same, and in *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583, our supreme court stated:

> "The statutes were conceptually separable and different. The one related to an action arising upon wrongful death; the other related to a right of action for personal injury arising during the life of the injured person." *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 431, 308 N.E.2d 583, 586-87.

Where a cause of action is brought both for wrongful death and for personal injury arising during the life of the deceased, both statutes must come into effect. As stated in *Murphy*:

> "[W]here there have been wrongful death and survival statutes the usual holding has been that actions may be concurrently maintained under those statutes. The usual method of dealing with the two causes of action ° ° ° is to allocate conscious pain and suffering, expenses and loss of earnings of the decedent up to the date of death to the survival statute, and to allocate the loss of benefits of the survivors to the action for wrongful death." *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 429, 308 N.E.2d 583, 586.

■■ In the instant case, plaintiffs' claim for lost earnings, medical expenses, and pain and suffering was not filed within the limitation period applicable under the survival statute. Evidence indicated that the deceased was aware of his illness and its cause at least eight months prior to his death. His cause of action accrued, and the statute of limitations began to run at that time rather than at his death. (*Wigginton v. Reichold Chemicals.*) Accordingly, the period of limitation under the survival statute had already run at the time the complaint was filed, and the court properly dismissed that portion of counts III and IV of the complaint.

Plaintiff's final contention is that the trial court erred in dismissing her claim for loss of consortium. At the time the complaint was filed, a cause of action for loss of consortium was governed by the five-year statute of limitation for all civil actions not otherwise provided for in the statute limiting commencement of personal actions and not by the two-year limitation for actions for an injury to the person. (Ill. Rev. Stat. 1973, ch. 83, par. 16; *Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 317 N.E.2d 505.) Subsequently, the limitation period was amended as follows:

> "Actions for damages for loss of consortium or other actions deriving from injury to the person of another shall be commenced within the same period of time as actions for damages for injury to such other person." Ill. Rev. Stat. 1979, ch. 83, par. 15.1 (amended by Pub. Act 80-714, §1, eff. Oct. 1, 1977).

■■ It is established that an amendment shortening a limitation period does not operate to divest a litigant of his cause of action if his suit has

already been filed. (*Martinez v. Rosenzweig* (1979), 70 Ill. App. 3d 155, 387 N.E.2d 1263.) Since it is apparent that plaintiff's claim was filed within five years of the time when her cause of action accrued, we conclude that the trial court erred in dismissing the count alleging loss of consortium.

For the foregoing reasons, we affirm the trial court's denial of defendant's motion to dismiss counts I and II of plaintiff's complaint. We also affirm the court's dismissal of that part of counts III and IV of the complaint alleging lost earnings, medical expenses, and pain and suffering on behalf of the deceased. The dismissal of the claim for loss of consortium is reversed.

Affirmed in part; reversed in part.

JONES and KARNS, JJ., concur.