**Pamela M. DANIELS, Individually and as Special Administrator of the Estate of Anthony K. Daniels, Deceased, Plaintiff–Appellant,**

v.

**USS AGRI–CHEMICALS, A DIVISION OF U.S. DIVERSIFIED GROUP, USX Corporation, a Corporation, Union Carbide Corporation, a Corporation, et al., Defendants–Appellees.**

No. 90–3533.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1991.

Decided June 5, 1992.

Rehearing and Rehearing En Banc Denied July 23, 1992.

---

378

Curt N. Rodin (argued), Anesi, Ozmon & Rodin, Chicago, Ill., for plaintiff-appellant.

Luanne Ellison (argued), Gessler, Flynn, Fleischmann, Hughes & Socol, William F. Conlon, Prentice H. Marshall, Jr. (argued), Sidley & Austin, Chicago, Ill., for defendants-appellees.

Before CUDAHY and RIPPLE,* Circuit Judges, and ENGEL, Senior Circuit Judge.**

CUDAHY, Circuit Judge.

Pamela Daniels is a resident of Indiana. So was her late husband, who died in 1986 as a result of injuries he sustained in an accident that occurred in Indiana. In spite of these Indiana connections, Daniels filed suit seeking compensation for the wrongful death of her husband in Illinois state court, stating her theory of the case as one based on Illinois law. The defendants removed

---

* Judge Ripple recused himself after oral argument in this case and took no further part in the consideration or decision of the matter.

** Honorable Albert J. Engel, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

the case to federal court based on diversity of citizenship. During the course of discovery, the parties concluded that the applicable law was not that of Illinois, but of Indiana. By the time Daniels amended her complaint to reflect that conclusion, however, Indiana's two-year time limit for filing wrongful death actions had expired. The district court found that the suit was therefore barred and granted summary judgment for the defendants. Daniels appeals.

## I.

On May 9, 1986, Anthony K. Daniels was severely injured when the container of anhydrous ammonia with which he was working exploded. He sustained burns to approximately 80% of his body, resulting in his death on May 18, 1986. On January 16, 1987, his wife Pamela Daniels filed an ex parte petition in the Circuit Court of Cook County, Illinois, requesting appointment as a "Special Administrator" of her husband's estate for purposes of asserting an action under the Illinois Wrongful Death Act, Ill. Rev.Stat. ch. 70, § 1 (1989) (Illinois Act). Daniels believed that the Illinois Act would apply to her claim because the ammonia cylinder had been filled in Illinois and her husband's death actually had occurred there. Daniels stated in her petition that she was "competent to act in the capacity of special administrator pursuant to Chapter 110½, § 9–1 of the Illinois Revised Statutes." As it later turned out, Daniels did not in fact meet the requirements of that provision because she was not a resident of Illinois. The Circuit Court, however, was not aware of this fact and granted Daniels' petition.

Following her appointment, Daniels filed a complaint in the Circuit Court of Cook County against USX Corporation, the manufacturer of the ammonia cylinder, and several affiliated companies (collectively, USX). Count I of the two-count complaint alleged that the ammonia cylinder had been "unreasonably dangerous" due to design defects, manufacturing defects and inadequate warnings to consumers, and that as a direct and proximate result of its unreasonably dangerous condition the cylinder had exploded, causing the death of Daniels' husband. The complaint alleged that these facts gave rise to a cause of action under the Illinois Wrongful Death Act and demanded judgment against the defendants in the amount of $2,000,000. The complaint also contained a count for Daniels' loss of consortium, which is not at issue here.

On February 15, 1987, USX petitioned for removal of the case to the Northern District of Illinois on the basis of diversity of citizenship. Approximately one year later, on February 24, 1988, Daniels filed her first amended complaint, adding Union Carbide, the distributor of the ammonia cylinder, and affiliated companies (collectively, Union Carbide) as defendants. The first amended complaint contained the same counts as the original complaint, although the factual allegations as to the defendants' wrongful conduct were significantly more specific.

On March 4, 1988, USX filed its answer and affirmative defenses to the amended complaint. The affirmative defenses included the allegation that the Illinois Wrongful Death Act had no application to the case and that Daniels was not competent to act as special administrator under chapter 110½, § 9–1 of the Illinois Revised Statutes because she was not an Illinois resident. Union Carbide raised the same defenses in its answer to the amended complaint, filed on April 8, 1988.

On September 22, 1988, Daniels petitioned the district court to appoint her as personal representative of her husband's estate under section 29-1-10-15 of the Indiana code for the purpose of asserting a claim under the Indiana Wrongful Death Act, Ind.Code Ann. § 34-1-1-2 (Burns 1986) (Indiana Act). She also sought leave to file a second amended complaint deleting her Illinois Wrongful Death Act claim and substituting a claim under Indiana law. The court granted both motions on September 28. A month later, the district court vacated Daniels' earlier appointment as special administrator under Illinois law on motion of the defendants. On November 2, 1988, Daniels filed a third amended complaint containing two counts under the

Indiana Wrongful Death Act and two counts of loss of consortium.

On March 2, 1989, Union Carbide moved for summary judgment on Daniels' claims under the Indiana Act. Union Carbide argued that it was entitled to summary judgment because Daniels had failed to comply with the two conditions precedent to maintaining a wrongful death action under the Indiana statute: (1) that she be appointed as her husband's personal representative to assert a claim within two years of his death; and (2) that she actually file the action within that two years. The district court agreed and granted summary judgment for the defendants on the wrongful death claims. On November 6, 1990, following denial of her motion to reconsider, Daniels voluntarily dismissed her claim for loss of consortium and the district court thereafter entered final judgment for the defendants.

We review the district court's grant of summary judgment de novo. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991). Summary judgment is appropriate only if, taking all facts in the light most favorable to the nonmoving party, we conclude that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990).

## II.

■ The Indiana Wrongful Death Act provides:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefore against the latter, if the former might have maintained an action had he or she ... lived.... When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years....

Ind.Code Ann. § 34–1–1–2 (Burns 1986). There are thus two conditions precedent to

a cause of action under the Indiana Act: (1) the plaintiff must be appointed "personal representative" of the decedent within two years of the death; and (2) the suit must be brought within that same two years. *General Motors Corp. v. Arnett*, 418 N.E.2d 546 (Ind.App.1981). The district court found that Daniels had not fulfilled either of these conditions because she had neither been validly appointed as her husband's personal representative nor brought suit under the Indiana Act until more than two years after her husband's death. The court rejected Daniels' argument that her September 1988 appointment as personal representative under Indiana law and her third amended complaint alleging a cause of action under the Indiana Act related back to the date of the original complaint under Federal Rule 15(c) and were therefore timely. The court found that Indiana courts have construed the two-year time limit in the Indiana Act as a substantive "condition precedent to suit" rather than a procedural statute of limitations. The court therefore concluded that because "[s]ubstantive rights created by statute are controlled by state law" under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Rule 15(c) did not apply.

Although the applicability of Rule 15(c) to the facts of this case is an interesting question, we see no need to reach it because Daniels makes an alternative argument for reversal which we find persuasive. Daniels contends that her suit, *as originally filed*, fulfilled the two conditions precedent to suit under the Indiana statute. We address the two conditions separately.

### A. *Commencement of the Action*

■ The Indiana Wrongful Death Act requires that "the action" be "commenced" within two years of the decedent's death. The statute does not define "the action," nor does it tell us when the action "commences." However, the absence of any reference to the statute following "the action" strongly suggests that a complaint can fulfill the two-year condition precedent

without explicitly stating that the cause of action arises under the Act.

■ Indiana's rules of trial procedure confirm that suggestion. Indiana Rule 3 provides: "A civil action is commenced by filing a complaint with the court or such equivalent pleading document as may be specified by statute." Since the Indiana Wrongful Death Act specifies no "equivalent pleading document," the complaint commences that action. To state a claim for relief, the complaint must contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which he deems himself entitled." Ind. R.Tr. P. 8. Thus Indiana, like the federal courts, employs a system of "notice" pleading. *State v. Rankin*, 260 Ind. 228, 294 N.E.2d 604, 606 (1973); *State v. Thompson*, 179 Ind.App. 227, 385 N.E.2d 198, 216 (1979).[1]

■ Under notice pleading, "a plaintiff essentially need only plead the operative facts in the litigation." *Rankin*, 294 N.E.2d at 606. Neither federal nor Indiana pleading rules require the complaint to include even a theory of the case, much less the statutory basis for recovery. *Id.; Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). Moreover, "specifying an incorrect theory is not fatal." *Bartholet*, 953 F.2d at 1078; *see also* 5 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1219 at 191–94 (1990). Complaints are to be construed liberally; the court "should ask whether relief is possible under any set of facts that could

be established consistent with the allegations." *Bartholet*, 953 F.2d at 1078; *see also Rankin*, 294 N.E.2d at 606. This approach is consistent with the purpose of the complaint under a notice pleading system, which is "to advise the other party of the event being sued upon." Wright & Miller, *supra*, § 1202 at 69.

■ There is no question that the defendants in this case were so advised within the statutory period. The substantive allegations in Count I of Daniel's third amended complaint were identical to those contained in both the first and second amended complaints, both of which were filed well within two years of her husband's death; the third amended complaint merely deleted the Illinois Wrongful Death Act and substituted the Indiana Wrongful Death Act. The defendants have never argued that the substantive allegations in the third amended complaint were insufficient to state a claim under the Indiana Act, and we see no basis on which they could do so. Clearly, then, both the first and second amended complaints *also* stated a claim under Indiana law, although they *cited* Illinois law. What Daniels did, in essence, was specify the wrong legal basis for her claim. That error was not unreasonable given the tendency of Illinois courts to interpret the applicability of the Illinois Wrongful Death Act broadly. *See, e.g., Mitchell v. United Asbestos Corp.*, 100 Ill. App.3d 485, 55 Ill.Dec. 375, 426 N.E.2d 350 (1981) (applying Illinois Act in action brought by Missouri administratrix for wrongful death of Missouri resident whose surviving family were all residents of Mis-

1. Because the Indiana rules are modeled closely on the federal rules, Indiana courts often look to federal cases for guidance in applying the Indiana rules. Oakley & Coon, *The Federal Rules in State Courts: A Survey of State Court Systems of Civil Procedure*, 61 Wash.L.Rev. 1367, 1395 (1984); *see, e.g., State ex rel. Long v. Marion Super.Ct.*, 275 Ind. 533, 418 N.E.2d 218, 219 (1981) (noting that in adopting Indiana Trial Rule 3, Indiana "effectively adopted" Federal Rule 3, as well as "the construction which the Federal Courts have placed upon the rule"); *Farm Bureau Ins. Co. v. Clinton*, 149 Ind.App. 36, 269 N.E.2d 780, 783 (1971) ("[W]e ... deem federal decisions very helpful in construing our rules of procedure and in determining what is

required in a complaint to defeat a 12(B)(6) motion to dismiss."). Therefore, we need not decide whether federal or state procedural rules apply in construing the pleadings in this case. *Compare Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Federal Rule 4(d)(1), rather than conflicting state rule, prescribes service of process in diversity case) with *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (state rule prescribing when an action "commences" for purposes of state statute of limitations applies in diversity case rather than Federal Rule 3). Because the Indiana courts would feel free to use both state and federal cases, we do the same.

souri and whose last illness and funeral both occurred in Missouri). Nor did it affect the gravamen of her complaint. Had defendants made a motion to dismiss the first amended complaint under Federal Rule 12(b)(6) once they realized that Illinois law was inapplicable to the case, the district court would have been obliged to deny it. Under either Indiana or federal pleading rules, the court would have had to conclude that the complaint stated a claim for relief under *Indiana* law. Therefore, the complaint fulfilled the two-year condition precedent of the Indiana Act. Daniels' later amendment was of no more legal significance than the correction of a typographical error. *Cf. Bartholet*, 953 F.2d at 1075 ("An effort to invoke nonexistent state law is no different from a spelling error.").

### B. *Personal Representative*

▮ The Indiana Wrongful Death Act also requires that the wrongful death action be brought by the "personal representative" of the decedent. Daniels had in fact been appointed her husband's representative by the Cook County Circuit Court at the time she filed her initial complaint against USX. It is clear that a foreign personal representative may maintain an action under the Indiana Wrongful Death Act. *Blusy v. Rugh*, 476 N.E.2d 874 (Ind. App.1985). Although the district court later vacated Daniels' appointment on the ground that it was invalid, that vacation did not retroactively render the appointment a nullity. Further, an Indiana court presented with a complaint under the Indiana Act filed by a foreign representative presumably would not address the validity of the representative's appointment under the appointing state's law. The full faith and credit statute, 28 U.S.C. § 1738, requires the courts of one state to give to the "judicial proceedings" of any court of any other state "the same full faith and credit" that those proceedings would have in the ren-

dering state. Under Illinois law, the regularity of an administrator's appointment may not be attacked in a collateral proceeding. *Alfaro v. Meagher*, 27 Ill.App.3d 292, 326 N.E.2d 545 (1975); *In re Redmer's Estate*, 348 Ill.App. 76, 108 N.E.2d 25 (1952). Therefore, unless Daniels' appointment was void *ab initio*, Daniels was in fact the personal representative of her husband at the time she filed her suit and thus fulfilled the condition precedent of the Indiana Act. We conclude that the appointment was not void.

▮ A court's order is void if it was obtained by fraud or if the court had no jurisdiction to enter it. *Green v. Wilmot Mountain, Inc.*, 92 Ill.App.3d 176, 47 Ill. Dec. 763, 415 N.E.2d 1076, 1078 n. 2 (1980); *Federal Sign & Signal Corp. v. Czubak*, 57 Ill.App.3d 176, 14 Ill.Dec. 686, 372 N.E.2d 965, 967 (1978). Neither condition obtains here. It is true that Daniels' petition to the court seeking appointment as her husband's personal administrator contained two false statements: (1) that she was qualified to act as administrator under ch. 110½, § 9–1, and (2) that the estate had a cause of action arising under the Illinois Wrongful Death Act.[2] But the kind of fraud that renders an order void is that "which gives the court merely 'colorable jurisdiction' to enter it.... Such fraud involves false allegations that are determinative of the court's jurisdiction." *In re Marriage of Hanlon*, 116 Ill.App.3d 157, 72 Ill.Dec. 128, 452 N.E.2d 60, 64 (1983) (citation omitted). We do not think that either of the misstatements in Daniels' petition were determinative of the court's jurisdiction.

▮ Under Illinois law, jurisdiction to appoint an administrator depends on jurisdiction over the *case*—that is, over an "asset" of the decedent. *In re Estate of Hoffman*, 6 Ill.App.3d 438, 286 N.E.2d 103, 104 (1972); *see also Shirley's Estate v.*

---

**2.** There is some doubt whether either of these misstatements even constituted fraud. Generally, "fraud" implies some sort of knowledge that the statements being made are false. *See Black's Law Dictionary*, 594–95 (5th ed. 1979). It is not at all clear that Daniels *knew* that by signing the petition (probably drafted by her attorney) she was representing that she was a

resident of Illinois; the text of chapter 110½, § 9–1 does not appear in the petition. Similarly, Daniels apparently had a reasonable, good faith belief that she *did* have a claim under the Illinois Act. *See supra* p. 378. However, in light of our conclusion as to the basis of the court's jurisdiction, we need not address this question.

*Shirley,* 334 Ill.App. 590, 80 N.E.2d 99 (1948). Illinois courts

have recognized that a "cause of action" against an Illinois resident, though of presently undetermined value, may constitute an asset of an estate.... [J]urisdiction of the Illinois courts is proper for the purpose of asserting a claim against an Illinois resident because decedent, if living, would have had such a cause of action, which, by his death, has passed to his personal representative.

*Hoffman,* 286 N.E.2d at 104. USX, whose USS Agri–Chemicals division has an office and does business in Illinois, meets Illinois residency requirements. *Natural Gas Pipeline Co. v. Mobil Rocky Mountain, Inc.,* 155 Ill.App.3d 841, 108 Ill.Dec. 50, 51, 508 N.E.2d 211, 212 (1986) (corporation doing business in Illinois "is deemed a resident of Illinois"); *Mitchell v. United Asbestos Corp.,* 100 Ill.App.3d 485, 55 Ill.Dec. 375, 384, 426 N.E.2d 350, 359 (1981) (corporate defendants who conduct business in Illinois meet Illinois residency requirements). There appears to be no question that, had Daniels' husband lived, he could have brought an action against USX in Illinois. Therefore, the Illinois court had jurisdiction to appoint a personal representative to pursue that claim on behalf of his surviving wife and children. However erroneous the appointment might have been, it was not void. *Redmer's Estate,* 108 N.E.2d at 27.

### III.

Daniels correctly points out that none of the Indiana cases cited by the defendants in which a court barred a wrongful death suit for failure to comply with one or both of the Indiana Act's conditions precedent is on point here. In none of those cases had the plaintiff both been appointed personal representative *and* filed a wrongful death action within two years of the decedent's death. *See Murray v. Manville Corp. Asbestos Compensation Fund,* 1990 WL 156625 (N.D.Ill. Oct. 5, 1990) (first complaint stating wrongful death count filed three years after decedent's death); *Martin v. Rinck,* 491 N.E.2d 556 (Ind.App.1986) (no appointment in any forum until four years after decedent's death); *General Motors Corp. v. Arnett,* 418 N.E.2d 546 (Ind.App.1981) (no appointment in any forum until four months after two-year period expired); and *Honda Motor Co. v. Parks,* 485 N.E.2d 644 (Ind.App. 1985) (rejecting attempt to add entirely new defendant more than two years after decedent's death). Although Daniels (or, more realistically, her lawyer) made technical mistakes, she nevertheless managed to fulfill both conditions of suit under the Indiana Act, and she clearly "advise[d] the other part[ies] of the event being sued upon." Wright & Miller, *supra* § 1202 at 69. Therefore, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.