Andrzej Kabak, Plaintiff, v. Thor Power Tool Co., a Corporation, Defendant, Third-Party Plaintiff, Appellant, v. Bartlett-Snow-Pacific, Inc., a Foreign Corporation, Third-Party Defendant, Appellee.

Gen. No. 52,950.

First District, First Division.

February 17, 1969.

Clausen, Hirsh, Miller & Gorman, of Chicago (Herbert W. Hirsh, John R. Caffrey, and James T. Ferrini, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (Hamilton Smith and Frank J. Uvena, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action filed in Illinois for injuries sustained in Ohio, when an emery wheel shattered as plaintiff operated a portable grinding machine belonging to his employer, Bartlett-Snow-Pacific, Inc., of Cleveland, Ohio.

Defendant, Thor Power Tool Co., which manufactured the machine in Illinois and "directly or indirectly" sold it to plaintiff's employer, filed an answer denying the material allegations of plaintiff's complaint. Thor also filed a third-party complaint against "Bartlett," alleging that "Thor's" negligence, if any, was passive, and charging third-party defendant (Bartlett) with active negli-

gence and ultimate responsibility for plaintiff's injuries. The third-party complaint was dismissed on third-party defendant's motion, based on three grounds. Third-party plaintiff (Thor) appeals.

On appeal the determinative question is whether Bartlett, the third-party defendant, which had complied with the Ohio Workmen's Compensation Act, was relieved of further liability. No evidence was taken in the trial court, and the questions presented are based upon the pleadings, and exhibits filed by the third-party defendant (Bartlett).

The Ohio Code, article II, section 35, authorizes the creation of a State Workmen's Compensation fund and provides, with respect thereto:

> "Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries, or occupational disease . . . ."

The Ohio Code, section 4123.74 provides, with reference to compensation benefits paid injured employees:

> "Employers who comply with Section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition . . . whether or not such injury, occupational disease, bodily condition or death is compensable under Sections 4123.01 to 4123.94, inclusive, of the Revised Code."

Bartlett, third-party defendant, asserts that the foregoing provisions have been construed as immunizing employers from actions by third parties, and that Bankers Indemnity Ins. Co. v. Cleveland Hardware & Forging Co., 77 Ohio App 121, 62 NE2d 180 (1945), is directly in point. Bartlett states: "In that case, an employee was killed in the course of his employment by an explosion. His estate filed suit against an oxygen company, alleging that the explosion resulted from the negligent delivery by the oxygen company to the decedent's employer of oxygen instead of nitrogen. The suit was settled by the oxygen company's insurer which, subrogated to the rights of the oxygen company, brought suit against the employer on an active-passive negligence theory. The Court held that since the employer had complied with the Ohio Workmen's Compensation Act, it could not be held accountable to the insurance company or its insured." Also cited is Republic Steel Corp. v. Glaros, 12 Ohio App2d 29, 230 NE2d 667 (1967).

Initially, we consider Thor's assertion that because the right of indemnification has been characterized and construed as a right, separate and distinct from plaintiff's rights in the prime action, Thor's right of indemnification should be determined by the law of Illinois. (Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346 (1960).) Thor states that "sound reason supports the view that the right of indemnity is independent of the tort from which it arises. It is an obligation created by the law to prevent unjust enrichment and should in the instant case be determined by the law of Illinois." We disagree. This factor is not determinative of the forum. We believe that an indemnification action, such as alleged here, must be considered in the light of the basic tort action from which it springs, and its prosecution is to be determined by the law found to be applicable to the original tort action, as discussed hereafter.

Thor next contends that "comity, the principle by which Illinois has the option of applying the lex loci delicti, *does not compel such application.* Clubb v. Clubb, 402 Ill 390, 84 NE2d 366, 371 (1949). Indeed the rule requiring such applications has come into general disrepute. Realization of the unjust and anomalous results which often inure from application of that traditional, but mechanical, rule has prompted application of the law of the forum in situations where the interest of the forum is substantial." Cited in support is Griffith v. United Air Lines, Inc., 416 Pa 1, 203 A2d 796, 801 (1964), where the court stated:

> "This place of the injury rule, sometimes termed the lex loci delicti rule, has been the subject of severe criticism in recent years. . . .
>
> "The basic theme running through the attacks on the place of the injury rule is that wooden application of a few overly simple rules, based on the outmoded 'vested rights theory,' cannot solve the complex problems which arise in modern litigation and may often yield harsh, unnecessary and unjust results."

Thor further argues that the Ohio law contravenes basic Illinois public policy. "Thor, a resident of Illinois, conducts its manufacturing and sales operations in this state in accordance with Illinois law; nevertheless Bartlett, a resident of Ohio, seeks to use the Illinois judicial system to deprive Thor of the safeguards and guarantees of Illinois law."

Thor further argues that the Ohio statute, as interpreted by the Ohio Appellate Court (77 Ohio App 121), is repugnant to established concepts of justice; it would prejudice the interests of an Illinois resident by confiscation and destruction of rights which lie entirely outside Ohio; following that law, the trial court erroneously

barred an Illinois resident, only technically liable under Illinois law, from recovery against the ultimate delinquent, simply because the accident fortuitously occurred beyond Illinois borders.

Thor asserts that application of the Ohio statute in Illinois would violate the guarantees of due process of law and equal protection of the laws under the Federal and Illinois Constitutions, as well as section 22 of article IV of the Illinois Constitution, forbidding special laws granting special privileges and immunities, and the policy of the state Constitution set forth in section 19 of article II providing that every person ought to find a remedy in the law for all injuries and wrongs received. Thor maintains "the Ohio law extends its regulation beyond the employer-employee relationship, unreasonably and arbitrarily interfering with the rights of one not a party thereto. The constitutionality of such regulation in the circumstances now presented has not yet been passed upon."

Bartlett, third-party defendant, contends that it is the law of Ohio that if an Ohio employee receives compensation under the Ohio Workmen's Compensation Act, his Ohio employer cannot be required to indemnify a manufacturer who was held liable to pay damages to the employee for injuries suffered by reason of the manufacturer's negligence; therefore, Bartlett, having paid "Kabak" under the Ohio Workmen's Compensation Act, is relieved from further liability and specifically of liability to indemnify Thor for any damages which Thor may ultimately have to pay to Kabak. Bartlett maintains that the constitutional provisions which Thor contends have been violated "were not intended to apply under circumstances such as these. If they were, choice of law might become a choice of which state's constitutional provisions should be violated, and Illinois residents injuring others in other jurisdictions could claim the protection of Illinois law whenever Illinois law proved more

favorable than that of the jurisdiction in which the injury occurred." We agree.

Of the authorities cited by Bartlett, we believe the factual situation in Elston v. Industrial Lift Truck Co., 420 Pa 97, 216 A2d 318 (1966), is similar to the instant case, and we find the Pennsylvania court's reasoning to be most persuasive. In that case a Pennsylvania resident employed in New Jersey sustained an injury in New Jersey in the course of his employment and recovered benefits under the New Jersey Workmen's Compensation Act. Subsequently, he filed suit in Pennsylvania against the manufacturer of the product which caused his injury. In turn, the manufacturer, a Pennsylvania corporation, filed a third-party complaint seeking contribution from the employer. The manufacturer conceded that New Jersey law barred its action for contribution but contended that Pennsylvania law should control. The Pennsylvania Supreme Court held that New Jersey law applied because compensation had been paid under the New Jersey Workmen's Compensation Act. The court stated (p 323):

> "Such deference to the exclusivity feature of the workmen's compensation law of a state having a significant interest in the work-connected injury is in accord with the position taken by the Restatement which provides: 'Recovery for tort . . . will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation act (a) of any state under which the plaintiff has obtained an award for the injury, or (b) of a state under which the plaintiff is entitled to obtain an award for the injury, provided that this state is the state (1) where the injury occurred, or (2) where the employment is principally located . . . .' Restatement 2d, Conflict of Laws, § 403(b) (Tent Draft No. 9, 1964). The approach taken is justified on the ground that 'to deny a

196

person the immunity granted him by a workmen's compensation act of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what those costs will be.' Id. at comment b. Moreover, it is clear that difficulties in funding such a program are presented when the exposure to unlimited common law liability remains possible. Thus, it is thought unfair to deny a person who provides an assured recovery absent fault the quid pro quo of protection against common law tort liability. See ibid."

Bartlett asserts that under normal conflict of law standards, Ohio law should determine whether Bartlett can be required to indemnify Thor for any damages it must pay to Kabak because most of the "contacts" employed in conflict of law cases were in Ohio.

1. The accident occurred in Ohio.
2. Kabak resided in Ohio at the time of the accident.
3. Kabak was employed in Ohio at the time of the accident.
4. Bartlett's place of business where the accident occurred was in Ohio.
5. The equipment manufactured by Thor was in Ohio at the time of the accident.
6. Kabak received compensation under the Ohio Workmen's Compensation Act.
7. Thor, in placing its equipment into the stream of commerce, knew or should have known that its equipment would or could be used in Ohio.
8. If Bartlett negligently failed to inspect or to repair the equipment properly, as the third-party complaint alleges, its negligent acts of omission occurred in Ohio.

With due consideration to the contentions and authorities of both sides, we believe two recent Illinois decisions supply the guidelines to be used here. Graham v. General U. S. Grant Post No. 2665, 97 Ill App2d 139, 239 NE2d 856 (opinion filed September 19, 1968), and Marchlik v. Coronet Ins. Co., 40 Ill2d 327, 239 NE2d 799 (opinion filed June 21, 1968, and rehearing denied September 24, 1968).

In the Graham case, one of the issues required a determination of the extraterritorial effect of the Illinois Dram Shop Act. In an extended review of the question of the extraterritorial effect, Mr. Justice Davis said (p 149):

> "If we give extraterritorial effect to the Act, the result creates a conflict with the traditional choice of law rule, found in the original Restatement of Conflict of Laws (§§ 377 and 378), and followed by the Illinois Courts . . . . Such rule has been lex loci delicti—that the substantive rights and liabilities arising out of a tortious occurrence are determined by the law of the place of the tort. The rationale of the rule is that its mechanical simplicity, with the assumed predictability of results as a corollary, is of first importance."

After reviewing the policy factors affecting choice-of-law rules and choice-influencing considerations, Mr. Justice Davis further said (p 155):

> "We adopt this concept of the effect of abandoning the mechanical rule of thumb application of the lex loci delicti rule.

> "Our fast changing and moving era with its attendant new social and economic problems, requires a reevaluation of the choice of law rule in multistate tort situations, to the end that such rule will be made for the people and the problems of today. The

nice tidy perfection of uniformity and simplicity should not prevail over elementary choice-influencing considerations, public policy, decency and justice."

In Marchlik, the plaintiff was a resident of Wisconsin and was injured there. The action was commenced in Illinois under the Wisconsin "direct action" statutes, which authorized original suits against insurance companies provided the injuries were sustained in Wisconsin. Mr. Justice House delivered the opinion of the court and, on page 329, said:

"The issues as stated by the parties are whether the public policy of Illinois precludes direct action against an insurer for tort liability of the insured where the policy has a 'no action' clause and when the statutory law of the place where the tort occurs allows direct action and, if so, does the full-faith-and-credit clause of the constitution of the United States force a State to enforce a foreign statute.

"The preliminary approach to these issues is whether Wisconsin's direct action statutes are procedural or substantive. If procedural or remedial, it is well settled that the lex fori, or law of the jurisdiction in which relief is sought, will govern. (15A CJS Conflict of Laws, sec 9; 16 Am Jur2d, Conflict of Laws, sec 76.) On the other hand, the lex loci delictus or law of the place of wrong generally governs where the substantive rights of the parties will be affected. But even this is an oversimplification for, if entertaining a foreign cause (such as this direct action suit against casualty insurers) is contrary to the public policy of the forum, its courts may bar enforcement of the foreign remedy, provided, of course, such a bar is not in contravention of the full-faith-and-credit clause of the Federal constitution."

At p 332:

"We adopt the view that this direct action statute is substantive and, as such, is entitled to comity, provided there is no compelling public policy of this State to the contrary.

"Public policy has been defined as 'Judicial decisions, legislation and constitutions as well as customs, morals and notions of justice which may prevail in a state.' . . . An examination of Illinois law and customs will, we believe, demonstrate that entertaining direct action suits is contrary to a firmly-fixed public policy."

At p 333:

"Foreign substantive law is not, of course, unenforceable as being contrary to public policy just because it differs from our own law, but the differences here are such as to be against our public policy."

■ From the pronouncements made in Graham and Marchlik, we conclude that in Illinois the lex loci delicti, or law of the place of the wrong, generally governs where the substantive rights of the parties will be affected, provided there is no compelling public policy of this state to the contrary.

■ As argued by Bartlett, most of the contacts in this case were in Ohio. While we agree that "mere counting of contacts" should not be determinative of the law to be applied, we believe the contacts here cannot be ignored. The fundamental and important contacts were all in Ohio, the "center of gravity," and Bartlett, in complying with the Ohio Workmen's Compensation Act, has the substantive right to look to Ohio law to determine whether it has any further obligation on account of the work-connected injury.

Although Ohio and Illinois differ on the right of indemnification in workmen's compensation cases, we be-

200

lieve the application of the Ohio law here is not so repugnant to the public policy of Illinois as to require the courts of Illinois to refuse to exercise comity and to deny extraterritorial effect to the Ohio Workmen's Compensation Act, which gave Bartlett substantive rights.

Therefore, for the reasons given, the order which dismissed Thor's third-party complaint is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.