LOUISE MALATESTA, as Adm'x of the Estate of Donald C. Malatesta, Sr., Deceased, Plaintiff and Defendant in Intervention-Appellee, v. MITSUBISHI AIRCRAFT INTERNATIONAL, INC., *et al.*, Defendants (Hartford Insurance Company, Plaintiff in Intervention-Appellant).

First District (6th Division)   No. 1—94—0690

Opinion filed September 8, 1995.

Cassiday, Schade & Gloor, of Chicago (D. Patterson Gloor, Jennifer A. Keller, and Susan M. Hyser, of counsel), for appellant.

Kreindler & Kreindler (Francis G. Fleming and Steven R. Pounian, of counsel), and Law Offices of Norman J. Lerum (Norman J. Lerum, of counsel), both of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

On February 25, 1988, the plaintiff, Louise Malatesta, filed a wrongful death and survival action in Cook County against the defendants, Mitsubishi Aircraft International, Inc., Mitsubishi Heavy Industries, Ltd., and Sperry International, for their involvement in the plane crash that killed her husband. On December 16, 1988, Hartford Insurance Company (Hartford), the decedent's employer's workers' compensation insurance carrier, was permitted to intervene to enforce its lien. The day before the trial was to begin, the plaintiff settled her suit with the defendants for $375,000. She filed a motion for summary judgment against Hartford, asserting that Hartford had no right to any part of the settlement proceeds. The trial judge granted this motion, and Hartford appeals.

In her complaint, the plaintiff asserted wrongful death and sur-

vival actions against Mitsubishi Aircraft, Mitsubishi Heavy Industries and Sperry International. She alleged that these defendants were liable, based on strict liability in tort and negligence, for product defects that caused her husband's death.

According to the complaint, on March 5, 1986, the plaintiff's husband was flying from Meigs Field in Chicago to the Du Page County Airport. He was aboard a plane manufactured, distributed and sold by Mitsubishi Aircraft and Mitsubishi Heavy Industries. The plane contained an autopilot system that Sperry International had designed, manufactured and distributed. The plane crashed near Eola, Illinois, killing the plaintiff's husband. The plaintiff alleged that the crash resulted from defects in the plane and autopilot system.

The parties disagree as to whether the decedent's employer was Connecticut Coke Company or D'Addario Industries. It is undisputed, however, that he began working for his employer in 1966 and that both Connecticut Coke and D'Addario were Connecticut corporations. Other facts surrounding the accident are also undisputed. The decedent was killed during the course of his employment as an aircraft pilot. He was a resident of Connecticut, as is the plaintiff. The plaintiff applied for workers' compensation benefits under the Connecticut statute, and, as of the date of settlement, she had received approximately $177,000 in benefits. The parties agree that Hartford has now paid her over $200,000 in benefits and continues to pay her approximately $500 per week.

When Hartford filed its petition to intervene, the plaintiff opposed Hartford's motion on the sole basis that it was not timely under Connecticut law. She conceded that the petition would be timely under Illinois law but contended that Connecticut law applied. In the proceedings on the petition to intervene, the motion judge stated that he did not think it was necessary to reach the conflict issue; the issue was whether giving notice of a routine motion was equivalent to filing it. He decided that such notice was equivalent to filing, and, therefore, the petition was timely under either Connecticut or Illinois law. He granted Hartford's petition to intervene and overruled the plaintiff's objections to the petition.

In her motion for summary judgment, the plaintiff asserted that (1) under Connecticut law, a workers' compensation insurance carrier had no right to a lien on an employee's recovery from a third party for a product liability claim, and (2) Connecticut law should apply because the only connection the suit had to Illinois was that the plane crash had occurred in Illinois.

Hartford responded that Illinois law, under which it would have

a valid lien claim, should apply. Furthermore, equitable estoppel and *laches* should bar the plaintiff from asserting the Connecticut lien statute because she failed to assert it in contesting Hartford's petition to intervene.

The trial judge granted the plaintiff's motion. He found that there was a conflict between Illinois law, under which Hartford would have a lien against the settlement proceeds, and Connecticut law, under which Hartford would have no lien. Under Illinois choice of law rules, Connecticut law should apply because the only contact Illinois had with the case was the fact it was the situs of the injury and because application of Illinois law would undermine the Connecticut statute.

The judge rejected Hartford's *laches* argument because it was only available as an affirmative defense. He also rejected Hartford's equitable estoppel argument because he decided that Hartford was well aware that the choice of law question had been reserved and would determine the validity of its lien. Our review of the summary judgment is *de novo*. *La Salle National Bank v. Skidmore, Owings & Merrill* (1994), 262 Ill. App. 3d 899, 902, 635 N.E.2d 564, citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204.

■ We first address Hartford's argument that the judge erred in applying Connecticut law to Hartford's lien claim. Before we can apply a choice of law analysis to determine whether Illinois or Connecticut law governs Hartford's lien claim, we must determine whether there is a conflict in the laws of the two States. (*Kramer v. Weedhopper of Utah, Inc.* (1990), 204 Ill. App. 3d 469, 562 N.E.2d 271.) There is a conflict if the difference in laws will result in a difference in outcome. *Kramer*, 204 Ill. App. 3d at 474.

■ Under Illinois law, a workers' compensation insurance carrier may intervene to protect its right to a lien against the proceeds from an employee's settlement with a third-party tortfeasor. Section 5 of the Illinois Workers' Compensation Act provides:

> "If the injured employee or his personal representative agrees to receive compensation from the employer *** the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from [a] third[-]party [tortfeasor]." (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b) (now 820 ILCS 305/5(b) (West 1992)).)

Under this statute, Illinois courts have held that either an employer or a workers' compensation insurer may intervene in an employee's suit against a third-party tortfeasor in order to protect its lien interest in the employee's recovery. See, *e.g., Brandt v. John S. Tilley Ladders Co.* (1986), 145 Ill. App. 3d 304, 495 N.E.2d 1269.

Connecticut law also permits an employer who has become obligated to pay workers' compensation benefits to intervene in an employee's suit against a third-party tortfeasor:

> "[A]ny employer having paid, or having become obligated to pay, [workers'] compensation \*\*\* may bring an action against [a third-party tortfeasor] to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. If either such employee or such employer brings such action against such third person \*\*\* [the employee or the employer] may join as a party plaintiff in such action." (Conn. Gen. Stat. Ann. § 31—293 (West 1987).)

Hartford correctly asserts that the laws of both Connecticut and Illinois permit an employer to intervene in an employee's suit against a third-party tortfeasor in order to recover benefits it has paid to the employee.[1] A provision of the Connecticut Products Liability Act that was in effect at the time of the decedent's accident, however, expressly prohibited an employer or its workers' compensation insurer from obtaining a lien against an employee's recovery from a product liability claim against a third party:

> "(c) Neither an employer nor, in the event the employer is insured against liability under [the Connecticut Workers' Compensation Act], the insurer of such employer, shall have any lien upon any judgment received in any product liability claim, or any right of subrogation if the claim against the third party is a product liability claim." (Conn. Gen. Stat. Ann. § 52—572r(c) (West 1991).)

There is no such bar to a workers' compensation insurance carrier's lien claim in Illinois. Depending on which law applies to Hartford's lien claim, therefore, the outcome of the plaintiff's summary judgment motion and this appeal would differ. Under Illinois law, Hartford may assert a lien against the settlement proceeds from the plaintiff's product liability action against the defendants; Hartford would have no right to a lien under section 52—572r(c) of the Connecticut statutes.

---

[1]Unlike Illinois courts, Connecticut courts have not held that an insurer is equivalent to an employer for purposes of intervention. (See, *e.g., Johndrow v. State* (1991), 24 Conn. App. 719, 721, 591 A.2d 815, 816 (upholding the trial court's decision to strike the insurer's intervening complaint because "[a]n insurance carrier does not constitute an employer for the purposes of intervention within the meaning of General Statutes § 31—293").) Hartford argues that the plaintiff is foreclosed from making this argument by her failure to raise it in the trial court. Waiver aside, we choose to focus on Hartford's right to a lien rather than its right to intervene.

■ Before we apply a choice of law analysis to this conflict, it is logical to address Hartford's numerous arguments that, even if we were to conclude that Connecticut law governs the issue in this case, section 52—572r(c) would not apply to its lien claim. First, Hartford argues that this provision should not apply to the plaintiff's cause of action because this section was part of the Connecticut Products Liability Act and the pleadings of the plaintiff's complaint were in "direct contravention" of this Act.

Section 52—572n of the Act provides that a statutory product liability claim "may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. Ann. § 52—572n(a) (West 1991).

Hartford argues that, under *Winslow v. Lewis-Shepard, Inc.* (1989), 212 Conn. 462, 562 A.2d 517, the plaintiff's complaint would be inadequate to state a product liability claim under Connecticut law because she pleaded common law claims rather than a claim under section 52—572n(a). In *Winslow*, the Connecticut Supreme Court held that section 52—572n(a) provides the exclusive remedy for a product liability claim. The plaintiff in *Winslow* did not plead a claim under section 52—572n(a) because the statute of limitations that applied to claims under that provision would have barred his action. Instead he asserted a claim under common law theories of product liability. The court struck the common law counts of his complaint because it concluded that section 52—572n(a) was exclusive. *Winslow*, 212 Conn. at 471, 562 A.2d at 521.

We are not convinced that the plaintiff's complaint would be insufficient under Connecticut law based on *Winslow*. Although it is well established in Connecticut that a plaintiff may not plead common law or statutory claims in addition to or instead of a claim under section 52—572n(a) (see, *e.g., Hoboken Wood Flooring Corp. v. Torrington Supply Co.* (1991), 42 Conn. Supp. 153, 606 A.2d 1006; *Winslow*, 212 Conn. at 471, 562 A.2d at 521), we have found no case that holds a plaintiff may not state a legally sufficient claim under section 52—572n(a) by pleading common law product liability theories. To the contrary, the language of section 52—572m(b) of the Products Liability Act and *Hoboken* indicate that a complaint such as the one before us may state a claim under section 52—572n(a).

Section 52—572m(b) of the Products Liability Act defines a "product liability claim" within the statute as

"all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings,

instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." (Conn. Gen. Stat. Ann. § 52—572m(b) (West 1991).)

The strict liability and negligence pleadings of the plaintiff's complaint fall within this definition of a product liability claim under the Connecticut statute.

Based on this definition, the *Hoboken* court refused to strike the second count of a plaintiff's complaint, in which the plaintiff made specific negligence allegations and concluded that the defendant was liable under section 52—572n(a). The court held that this count was legally sufficient because, although negligence is a common law theory, under the definition in section 52—572m(b), it may form the basis for a statutory product liability claim. The court decided that the second count could "fairly be read as exclusively setting forth a statutory product liability claim under this latter theory and thus states a legally sufficient allegation." *Hoboken*, 42 Conn. Supp. at 155, 606 A.2d at 1008.

A conclusion by us that the plaintiff's complaint was legally sufficient under the Connecticut Products Liability Act would not conflict with the *Winslow* holding. The *Winslow* holding was based on the fact that the plaintiff had attempted to circumvent the exclusivity of the product liability statute by pleading common law claims instead of a claim under section 52—572n(a). In contrast, the plaintiff's complaint in this case may be read as pleading common law theories *as* a statutory product liability claim rather than *instead* of a statutory product liability claim. See also *Hoboken*, 42 Conn. Supp. at 157, 606 A.2d at 1009 (although the plaintiff's complaint was contrary to the legislative intent that all product liability claims be stated in a single count, this was a problem that could be remedied by a request to revise).

For these reasons, we believe that the plaintiff's complaint was not contrary to the Connecticut Products Liability Act. Even if we were to conclude that the plaintiff's complaint would be legally insufficient under Connecticut law due to the exclusivity of section 52—572n(a), however, we would not conclude that section 52—572r(c) was inapplicable to Hartford's lien claim. The plain language of the statute does not restrict the applicability of section 52—572r(c) to claims that would be legally sufficient under the Connecticut Products Li-

ability Act. To the contrary, section 52—572r(c) prohibits liens upon judgments received in "*any* product liability claim." (Emphasis added.) (Conn. Gen. Stat. Ann. § 52—572r(c) (West 1991).) The plaintiff's complaint against the defendants in this case would be such a claim under the broad definition of "product liability claim" in section 52—572m(b).

■ Hartford also urges us not to apply section 52—572r(c) to the plaintiff's case because there is a split in Connecticut authority concerning whether the date of injury or the date of employment is the relevant date for purposes of determining whether section 52—572r(c) is applicable. In this case, the decedent began working for his employer in 1966, before section 52—572r(c) was enacted, but the plane crash in which he died occurred in 1986, while this provision was in effect.

Our research indicates that there is no reported Connecticut State court case on this specific issue. Unreported decisions of the Connecticut Superior Court indicate a split on this issue, and there is also a conflict between Connecticut Superior Court decisions and decisions of the United States District Court for the District of Connecticut. The plaintiff, however, cites two Connecticut Supreme Court cases that convince us that the date of injury is the relevant date for determining the applicability of section 52—572r(c). In *Champagne v. Raybestos-Manhattan, Inc.* (1989), 212 Conn. 509, 562 A.2d 1100, the Connecticut Supreme Court held that substantive rights are fixed when a cause of action accrues, which is when the plaintiff discovers his injury. Specifically addressing the applicability of workers' compensation statutes, the supreme court also stated in *Iacomacci v. Town of Trumbull* (1988), 209 Conn. 219, 225, 550 A.2d 640, 642, quoting *Quilty v. Connecticut Co.* (1921), 96 Conn. 124, 127, 113 A. 149, 150, that " '[t]he obligations of the employer to dependents of an employee in case of the death of an injured employee are *** fixed and determined by the statute in force *at the time of injury.*' " (Emphasis in original.)

In support of its argument that section 52—572r(c) does not apply to its lien claim because the decedent's date of employment preceded the effective date of the statute, Hartford cites two cases, neither of which persuade us. One case, *Ulvedal v. Heidelberg Eastern, Inc.* (D. Conn. 1991), 764 F. Supp. 259, is a Federal district court case, and the other, *Kovac v. Cummings Insulation* (Conn. Super. Ct. February 10, 1993), No. 515801, is an unreported superior court case. Neither case holds that the date of employment controls the applicability of section 52—572r(c). In *Ulvedal*, although the court stated that it had applied the date of employment rule and that Connecticut law on this

issue was unsettled, its holding was a refusal to certify this issue to the Connecticut Supreme Court. (*Ulvedal*, 764 F. Supp. at 260.) The *Kovac* court held that it was not necessary to reach this issue because the employee's date of injury and employment preceded the effective date of the statute. (*Kovac*, slip op. at ____.) Based on the Connecticut Supreme Court cases the plaintiff has provided us, we believe section 52—572r(c) would apply to Hartford's lien claim because it was in effect at the time of the decedent's death.

■ Next, Hartford asserts that section 52—572r(c) does not apply to its lien claim because the statute does not state that it has extraterritorial effect and, consequently, we must presume it has none. The authority Hartford relies upon for this argument is an article on statutes in American Jurisprudence. (See 73 Am. Jur. 2d *Statutes* § 359 (1974).) Although this article does state this presumption, other information in the article demonstrates that this presumption is not relevant to the applicability of section 52—572r(c) to Hartford's lien claim. The article explains that a statute does not have extraterritorial effect when it regulates persons within its territorial jurisdiction, including the rights of these citizens regarding transactions outside its boundaries. (73 Am. Jur. 2d *Statutes* § 357 (1974).) Applying section 52—572r(c) to the dispute between the plaintiff and Hartford, who are both Connecticut residents, would not give extraterritorial effect to the statute.

■ Having determined that section 52—572r(c) would apply to Hartford's lien claim if Connecticut law governs its claim, we now turn to our choice of law analysis to determine whether Illinois or Connecticut law governs the dispute in this case. In *Ingersoll v. Klein* (1968), 46 Ill. 2d 42, 262 N.E.2d 593, Illinois adopted the choice of law analysis outlined in the Restatement of the Law, Second, Conflicts of Laws. Under this analysis, Illinois courts determine which law has the "most significant relationship" with the occurrence and the parties. In determining which law has the most significant relationship, Illinois courts examine (1) the place where the injury occurred; (2) the place where the conduct leading to the injury occurred; (3) the domicile, nationality, place of incorporation and place of business of the parties; and (4) the place where the parties' relationship is centered. *Ingersoll*, 46 Ill. 2d at 47.

■ Illinois courts do not merely count these contacts but instead apply a more sophisticated "interest analysis." (*Mitchell v. United Asbestos Corp.* (1981), 100 Ill. App. 3d 485, 492, 426 N.E.2d 350.) This interest analysis involves a three-step process: " 'first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to

ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.' " *Mitchell,* 100 Ill. App. 3d at 494, quoting *Miller v. Miller* (1968), 22 N.Y.2d 12, 16, 237 N.E.2d 877, 879, 290 N.Y.S.2d 734, 737.

■ In this case, there is only one issue, whether a workers' compensation insurer has a right to a lien against an employee's recovery from a third-party tortfeasor. As we have discussed, at the time of the decedent's accident, an insurer had this right under Illinois law but had no right under Connecticut law.

We next examine the policies embodied in the conflicting laws. (*Mitchell,* 100 Ill. App. 3d at 495.) The policy behind the Illinois law that allows an employer or insurer to intervene to protect its lien against the proceeds of an employee's action against a third-party tortfeasor is to prevent double recovery by the employee. (See *Chicago Transit Authority v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 379, 442 N.E.2d 546.) A similar policy is embodied in Connecticut law. As the Connecticut Supreme Court stated in *Skitromo v. Meriden Yellow Cab Co.* (1987), 204 Conn. 485, 490, 528 A.2d 826, 828, "one purpose of § 31—293 is to avoid double recovery." Another policy behind Connecticut law, however, is to protect its citizens from defective products. (*Touchette v. Smith* (Conn. Super. Ct. September 29, 1993), No. CV 91—0520651—S (the purpose of the Products Liability Act is to prevent the sale of defective products).) Section 52—572r(c) reflects a balance between these two policies. The Connecticut legislature chose to allow employees double recovery for injuries resulting from defective products, presumably to encourage employers and workers' compensation insurers to protect employees from defective products.

After isolating the issue and the conflicting policies, the three-step interest analysis requires us to examine the contacts each State has with the occurrence and the parties. These contacts are significant only as they relate to the issues involved in the case and the policies of the conflicting laws. *Vickrey v. Caterpillar Tractor Co.* (1986), 146 Ill. App. 3d 1023, 1026, 497 N.E.2d 814.

The first contact, the place of injury, is with Illinois in this case. Given the issue in this case, however, the validity of a workers' compensation lien, this contact has limited relevance.

The next contact is the place where the conduct leading to the injury occurred. The plaintiff argues in her brief that this conduct occurred in Texas and New York, where the manufacturers reside. Hartford does not dispute this assertion, and we have found nothing in the record that establishes this fact. Neither party claims that the conduct leading to the injury occurred in Connecticut or Illinois, however, and, therefore, this is a neutral factor in our choice of law analysis.

The parties' nationality, place of incorporation and place of business comprise the third type of relevant contact. It is undisputed that Hartford is a Connecticut resident, but the plaintiff disagrees with Hartford's assertion that it is also an Illinois resident. The parties agree that the decedent and his employer were Connecticut residents and that the plaintiff is a Connecticut resident.

The place where the parties' relationship is centered is the final contact we must examine. In her motion for summary judgment the plaintiff asserts that her husband's contract for employment was executed in Connecticut and that his employer obtained workers' compensation benefits coverage in Connecticut. In its response to this motion, Hartford did not dispute these assertions and does not dispute them in its brief. There is also no dispute concerning the fact that Hartford has paid the plaintiff workers' compensation benefits in Connecticut under the Connecticut workers' compensation statute.

An examination of these contacts leads to the conclusion that Connecticut has the more significant relationship to the issue in this case. Illinois was the site of the injury that led to Hartford's payment of workers' compensation benefits and the plaintiff's suit against the defendants. On the other hand, Connecticut is the State of residence of the plaintiff, Hartford, the decedent and the decedent's employer; the employment relationship and insurance relationship were created in Connecticut; and Hartford has and continues to pay the plaintiff workers' compensation benefits under the Connecticut Workers' Compensation Act.

We find that the parties' residences and the place their relationship is centered are the most relevant *Ingersoll* contacts to Hartford's lien claim because the resolution of this claim involves an allocation of funds based on the parties' relationship. These contacts indicate that Connecticut has the superior connection to the issue in this case.

In addition, the fact that Hartford has and continues to pay the plaintiff workers' compensation benefits under the Connecticut statute is another contact that leads us to believe Connecticut law should apply. In other Illinois cases involving a conflict of laws in the workers' compensation context, the fact that an employee has received workers' compensation benefits under the laws of one State has been an important factor in the courts' decision to apply the law of that State.

In *Vickrey v. Caterpillar Tractor Co.* (1986), 146 Ill. App. 3d 1023, 497 N.E.2d 814, for example, the court applied Missouri law. The employee in that case, a Missouri resident, was killed in Missouri by a wheel loader manufactured by Caterpillar, an Illinois resident. The employee's widow recovered workers' compensation benefits from the

employer, a Missouri corporation, under Missouri law. She then filed a product liability action in Illinois against Caterpillar, which filed a third-party complaint against the employer. Under Missouri law, an employer who paid workers' compensation benefits was immune from such a third-party complaint, but, under Illinois law, the employer had no such immunity. The court decided that Missouri law would apply:

> "The Missouri workers' compensation system and its policy of providing immunity from further suit would be gravely undermined by application of Illinois law in the instant case. The Illinois policy would not be similarly affected since an Illinois employer was not partially responsible for decedent's injuries nor did decedent recover benefits pursuant to the Illinois workers' compensation statutes." *Vickrey*, 146 Ill. App. 3d at 1027.

As in *Vickrey*, Connecticut law and the balance its legislature struck between the competing policies of preventing double recovery and protecting employees from defective products would be undermined by the application of Illinois law. Illinois law would not be similarly affected by the application of Connecticut law because the decedent, his widow, his employer and his employer's workers' compensation insurer all share Connecticut residency, and Hartford is paying workers' compensation benefits under Connecticut law.

In support of its decision, the *Vickrey* court cited another Illinois case that also supports our decision, *Kabak v. Thor Power Tool Co.* (1969), 106 Ill. App. 2d 190, 245 N.E.2d 596. In *Kabak*, the plaintiff, an Ohio resident working for an Ohio employer, was injured in Ohio by an emery wheel manufactured by an Illinois corporation. He received workers' compensation benefits under the Ohio statute and filed an action in Illinois against the manufacturer. The court held that Ohio law would apply to the manufacturer's indemnity action against the employer. Under Ohio law, the employer would not have to indemnify the manufacturer because it had paid workers' compensation benefits; under Illinois law, the employer could be liable to the manufacturer. Based on the contacts with Ohio, including the fact that the employee had received benefits under the Ohio Workmens' Compensation Act, the *Kabak* court concluded that Ohio law would apply to the indemnity issue. *Kabak*, 106 Ill. App. 2d at 200-01.

Cases from other States also support a conclusion that Connecticut has the most significant contacts with this case. In one case with facts almost identical to the one before us, *Perry v. Carter* (Mo. Ct. App. 1981), 620 S.W.2d 50, the Missouri Court of Appeals held that a workers' compensation insurance carrier's right to a lien on amounts

the employee recovered from a third party should be governed by the law of the State whose workers' compensation statute was invoked. The employee, a Georgia resident who worked for a Georgia employer, was injured in a car accident in Missouri during the course of her employment in Missouri. She collected workers' compensation benefits under Georgia law. She filed a claim in Missouri against one of the other drivers involved in the accident, and the employer's workers' compensation insurance carrier filed a petition to intervene, in which it sought to be subrogated to the employee's recovery and to have a lien to the extent of its benefit payments. The court held that Georgia law would apply to the insurer's right to reimbursement because the parties "were operating under that law and their rights should be determined by it." (*Perry*, 620 S.W.2d at 52.) The court reasoned that it appeared to be the usual rule that the reimbursement rights of a workers' compensation insurance carrier would be governed by the law of the State under which the employee had claimed benefits. See also Annot., 92 A.L.R.2d 1129, 1155 (1963).

As in *Perry*, Connecticut has an interest in applying its law to the issue in this case in order to protect the integrity of its workers' compensation statutory scheme, which has and continues to govern the relationship between Hartford and the plaintiff. Although section 52—572r(c) was not a provision of the Connecticut Workers' Compensation Act, it must be considered as part of Connecticut workers' compensation law because it provided an important limitation on workers' compensation liens. In addition, section 52—572r(c) expressly referred to the Connecticut Workers' Compensation Act and had little meaning apart from this Act. Moreover, although this provision was enacted as part of the Connecticut Products Liability Act, it was repealed in 1993 as part of the Connecticut Workers' Compensation Reform Act. Pub. Act 93—228, eff. July 1, 1993 (amending Conn. Gen. Stat. Ann. § 52—572r(c) (West 1991).

As in *Vickrey, Kabak* and *Perry,* the law of the State under whose law workers' compensation benefits were paid, in this case Connecticut, should apply.

Hartford argues that the policy behind section 52—572r(c) is not implicated in this case because the Connecticut legislature has repealed this section. Hartford cites *Mitchell v. United Asbestos Corp.* (1981), 100 Ill. App. 3d 485, 426 N.E.2d 350, in which the court applied Illinois law rather than a repealed Missouri law. Illinois law permitted full recovery in wrongful death actions, but Missouri imposed a $50,000 limitation on recovery in those suits. The relevant contacts with each State were equal, but the court applied Illinois law. It reasoned that Missouri had abandoned the policy embodied in

its law by repealing it, while the Illinois law contained an ongoing policy. In addition, there was no indication that the defendants had relied on the Missouri law in determining their conduct. *Mitchell*, 100 Ill. App. 3d at 499.

Although, as in *Mitchell*, the Connecticut law has been repealed, we believe that Connecticut nevertheless has a greater interest in applying its law than Illinois. Unlike *Mitchell*, the contacts in this case are not balanced. The only connection Illinois has to the litigation and the parties is that it was the site of the accident. All other contacts point to the application of Connecticut law, especially the fact that Hartford has and continues to pay workers' compensation benefits under that law.

Hartford also argues that we must apply Illinois law to its lien claim because the judges in this case have already applied Illinois law to some of the issues in the case. Hartford petitioned to intervene based on its rights under the Illinois Workers' Compensation Act, and the motion judge granted this petition. In addition, the trial judge applied Illinois law to a summary judgment motion involving a defendant, Cavenaugh Aviation, which is no longer in this case.

These facts do not establish the application of Illinois law. First, neither the motion judge's decision to grant Hartford's petition to intervene, nor the trial judge's application of Illinois law to issues involving Cavenaugh, is an issue on appeal. Second, we need not defer to the choice of law decisions of the judges because, as Hartford instructs us in its brief, the standard of review for the trial judge's decision is *de novo*. Finally, even if Illinois law did apply to some issues in this case, it would not necessarily apply to Hartford's lien claim. See *Moore v. Wausau Club* (N.D. Ill. 1991), 777 F. Supp. 619, 620, citing Restatement (Second) of Conflict of Laws § 145, Comment *d* (1971) (the employer's immunity from a contribution claim by a third-party tortfeasor was a distinct issue from the tortfeasor's liability to the employee and required a separate choice of law analysis).

Hartford also contends that summary judgment was improper because, under the doctrines of equitable estoppel, waiver and *laches*, the judge should have barred the plaintiff from asserting section 52—572r(c). Hartford claims these doctrines apply because the plaintiff misled it regarding the applicability of section 52—572r(c) and regarding her intention of asserting this provision. The facts Hartford asserts in support of this contention are that the plaintiff brought her complaint in "direct contravention of the Connecticut Products Liability Act" and that she failed to assert this provision when she opposed Hartford's petition for intervention.

We have already rejected Hartford's argument that the plaintiff's complaint was in "direct contravention" of the Connecticut Products Liability Act. We also find no support for Hartford's claim that the plaintiff was required to assert section 52—572r(c) at the time Hartford petitioned to intervene. Although Hartford asserts in its reply brief that Illinois law governs the procedural intervention issues in this case, it cites two Connecticut cases in support of its argument that the plaintiff was required to assert all of her defenses to its lien claim at the time it intervened. Neither of these Connecticut cases imposes such a requirement. In *Ulvedal*, there was no objection to the insurance carrier's motion to intervene and the court did not require one. (*Ulvedal*, 764 F. Supp. at 259.) In *Rodia v. Tesco Corp.* (1987), 11 Conn. App. 391, 527 A.2d 721, the plaintiff objected to the motion to intervene, but the court did not hold that such an objection was required.

Hartford provides us with no Illinois law that supports its claim that the plaintiff was required to assert her defense to Hartford's lien claim at the time it petitioned to intervene, and we have found no case that imposes such a requirement. The one case we have found that seems to address this issue indicates that, to avoid waiving a defense to a lien, an employee must merely raise the defense in the trial court. In *Robinson v. Liberty Mutual Insurance Co.* (1991), 222 Ill. App. 3d 443, 584 N.E.2d 182, Liberty intervened in an employee's malpractice action against a doctor for treatment of his on-the-job injury. Liberty had paid the employee workers' compensation benefits. In addition to its intervention petition, Liberty made a motion in which it argued that any settlement in the case should be "impressed" with Liberty's lien for $79,966.47. There is nothing in the opinion that indicates the plaintiff opposed the intervention petition, but the plaintiff did oppose Liberty's motion on the basis that the lien should only apply to amounts Liberty paid after the malpractice occurred. Liberty claimed on appeal that the plaintiff had waived this argument by not raising it in the trial court and that, if it had known the plaintiff would contest the amount of the lien, it would have requested discovery on the issue. The court decided that the plaintiff had not waived his objection to the amount of the lien because he had contested Liberty's motion on this basis. *Robinson*, 222 Ill. App. 3d at 446.

We find, therefore, that the doctrines of estoppel, waiver and *laches* do not apply in this case. Hartford has shown neither words or conduct by the plaintiff amounting to a misrepresentation or concealment of material fact by the plaintiff nor ignorance on its part that these representations were untrue. See *Vaughn v. Speaker* (1988),

126 Ill. 2d 150, 533 N.E.2d 885 (providing the elements of estoppel). Whether section 52—572r(c) would apply to Hartford's lien claim was a question of law, which Hartford admits a party is presumed to know. Moreover, Hartford provided workers' compensation insurance in Connecticut to the decedent's Connecticut employer and paid the plaintiff benefits under the Connecticut workers' compensation statute. It then petitioned to intervene in her product liability action against a third party and responded to the plaintiff's argument that its petition was not timely under Connecticut law. Based on these facts, we cannot believe that Hartford was unaware of the potential that section 52—572r(c), which specifically addressed the lien claims of workers' compensation insurers against recoveries for product liability claims, might apply to its claim or that the plaintiff might oppose its lien claim under this provision.

Similarly, Hartford has shown no waiver by the plaintiff of her right to assert section 52—572r(c). As one of the cases the plaintiff cites explains, "[w]aiver is an express or implied voluntary and intentional relinquishment of a known and existing right." (*Geier v. Hamer Enterprises, Inc.* (1992), 226 Ill. App. 3d 372, 389-90, 589 N.E.2d 711.) We cannot construe the plaintiff's failure to assert section 52—572r(c) in opposition to Hartford's petition to intervene as an intentional relinquishment of her right to do so later. *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989* (1994), 259 Ill. App. 3d 231, 631 N.E.2d 1302 (the defendants failed to show that the plaintiffs had waived their right to voluntarily dismiss their suit; their attorney's statement that, to obtain additional discovery, he could move to voluntarily dismiss the case but that he would not necessarily do so was insufficient to establish waiver).

Finally, the doctrine of *laches* also does not apply to this case. It is an affirmative defense (*Cundiff v. Unsicker* (1983), 118 Ill. App. 3d 268, 454 N.E.2d 1089) and, therefore, unavailable to Hartford, which is not a defendant. Hartford asserts that "Illinois case law indicates that *laches* may be an appropriate defense to an untimely motion," but in the case it cites in support of this claim, *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 443 N.E.2d 1125, the court held that mere delay does not constitute *laches* and that *laches* did not apply to the case before it.

For these reasons, we hold that Connecticut law applies to Hartford's lien claim. Under Connecticut law at the time of the decedent's injury, Hartford has no valid lien claim, and the trial judge, therefore, properly granted the plaintiff's motion for summary judgment.

Judgment affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.